UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

MONICA ROGERS,

   Plaintiff,

v.

UNION PACIFIC RAILROA COMPANY,

   Defendant.

CIVIL ACTION

NO.

## COMPLAINT

### NATURE OF THE ACTION

1. This is an action to halt and seek redress for the unlawful sexual harassment and assault by a Union Pacific Railroad Company ("UPRR" or "Defendant") Supervisor against its employee, MONICA ROGERS ("Plaintiff" or "ROGERS") in violation of Federal Law.

2. ROGERS is and was employed as a janitor for the Defendant and resides in the City of Chicago.

### PARTIES

3. Plaintiff MONICA ROGERS is an adult resident of the United States. At all times relevant to this Complaint, Plaintiff is and was a female employee of the defendant employed as a janitor.

4. Defendant UPRR is an Illinois business located in the City of Chicago and conducted business in the Northern District of Illinois.

### JURISDICTION AND VENUE

5. This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

1

6. On April 27, 2018, the Plaintiff timely filed a charge with the United States Equal Employment Opportunity Commission ("EEOC") against UPRR for sexual harassment in employment under the Title VII of the Civil Rights Act alleging sexual harassment/assault against the Plaintiff by Defendant's employee who was the supervisor of the Plaintiff.

7. The EEOC on October 7, 2019 issued MONICA ROGERS a Notice of Right to Sue Union Pacific Railroad Company for violation of the Title VII of the Civil Rights Act, as amended.

8. Venue is proper under 28 U.S.C. § 1331 because of all the acts and omissions forming the basis of this claim occurred in the Northern District of Illinois.

## FACTUAL ALLEGATIONS

9. At all relevant times, Plaintiff MONICA ROGERS was performing work for Defendant UPRR and on duty in connection with or in furtherance of Defendant's business of interstate commerce and transportation.

10. The Defendant UPRR employed Defendant JONATHAN SMITH as Manager of Bridge and Special Projects. His responsibilities included assigning work and supervising the work of UPRR janitors like the Plaintiff, MONICA ROGERS.

11. Prior to February 27, 2018, Smith was charged with inappropriate behavior to co-workers and employees under his supervision.

12. Upon information and belief, Smith has had sexual contact with subordinates and those who directly reported. He also doled out special favors and treatment for employees who granted sexual favors to him.

13. Upon information and belief, the UPRR transferred Smith to the Chicago office to be custodian supervisor after accusations of improper conduct with a female employee. No internal or criminal charges were brought against Smith stemming from this incident.

14. Following the report of these allegations, Defendant UPRR failed to discipline or otherwise institute oversight of Smith, and the UPRR allowed Smith to continue to supervise female employees and subordinates without protection or any measures to prevent him from being in the position to sexually harass and assault subordinates.

15. Smith's sexual harassment and predatory behavior was longstanding and premediated. For example, as part of his duties, Smith was responsible for installing department wide GPS tracking system in company vehicles that his employees used. However, in order to avoid supervision and continue his predatory behavior, Smith installed the GPS tracking system on all the vehicles except his company vehicle. UPRR failed to learn of this prior to Smith's assault on Ms. Rogers, which demonstrates its negligence and lack of proper oversight and institution of preventable follow UPRR controls for an employee with known risks of inappropriate sexual behaviors.

16. On February 27, 2018, UPRR assigned ROGERS to clean and maintain its passenger stations, including the Rogers Park and Ravenswood stations, as part of her job as UPRR janitor.

17. Plaintiff's supervisor was Jonathan Smith, and on that date, under a false pretext of having to perform duties outside his office at Ogilvie Transportation Center ("OTC") in downtown Chicago, Smith told Rogers that he would drive her to her assigned stations from the OTC instead of her riding commuter trains to get from station to station.

18. While driving to ROGERS' first assigned passenger station, ROGERS was sitting in the front passenger seat when Smith began to pull and tug at his crotch. He then touched and adjusted his genitals in a sexually provocative manner. Afraid of retaliation and losing her job, ROGERS ignored his actions and stared out the window in disbelief.

19. On prior occasions, Smith asked Plaintiff is she spit or swallowed after oral sex. This was a pattern of sexual harassment against his subordinates.

20. Upon arriving at the Rogers Park station, Smith asked ROGERS how long she would be, and she replied about 30 minutes. Smith then told ROGERS that he would wait in his vehicle until she was done and drive her to her next station.

21. After finishing her duties at the Rogers Park station, Smith drove ROGERS to the Ravenswood station and followed her inside, where he exposed himself and demanded oral sex. Fearing a violent physical assault or professional reprisals, ROGERS complied.

22. Unbeknownst to Smith, ROGERS preserved his semen that day by spitting it into a napkin and putting it into a rubber glove. ROGERS put the glove with the semen into her own work bag and later transferred it to a sealed plastic bag.

23. After she reported the sexual assault, ROGERS turned the semen sample into the police, who submitted it for testing. Tests confirmed it was semen and after initially denying the assault ever took place and denying sexual contact with ROGERS to the police, Smith did submit to a police DNA sampling procedure and the semen's identity was confirmed to be Jonathan Smith's ejaculate.

24. Defendant UPRR has taken no action against Jonathan Smith to this date.

25. Defendant UPRR did transfer, or allowed a transfer to occur, of Smith to Omaha sometime after this occurrence.

### VIOLATION OF THE CIVIL RIGHTS ACT OF 1964 AS AMENDED
### *VICARIOUS LIABILITY UNDER TITLE VII*

26. Title VII of the Civil Rights Act of 1964, as amended, *et seq.*, prohibits supervisors from sexually harassing or assaulting subordinates under threat of discipline after demand for sexual acts. Under Title VII, an employer is subject to vicarious liability to an employee when a supervisor sexually harasses or assaults subordinates under threat of discipline after demand for sexual acts.

27. The UPRR is not afforded an affirmative defense because Smith's harassment resulted in a tangible, adverse employment action, namely forced oral sex under the threat of discipline for absenteeism and attendance.

28. DNA testing results by the Illinois State Police prove that UPRR supervisor ejaculated into the Plaintiff's mouth.

29. After the incident was reported to the UPRR, the Defendant failed to follow its own policies regarding sexual harassment, failed to reprimand or otherwise discipline its supervisor, and pulled the Plaintiff out of service after her report of sexual assault.

30. In fact, the married Supervisor Smith denied anything happened at all, telling detectives that he "doesn't' prefer [sexually] African Americans."

31. UPRR failed to defend its female janitor, namely ROGERS, against her predatory supervisor because, in the words of its Senior EEO Analyst Alie Shields, "inconsistencies between the data evidence and Complainant's statements must be factored into the credibility and accuracy of her accusations, making it difficult to pinpoint if and when the alleged assault occurred."

32. At all relevant times hereot, Senior EEO Analyst Alie Shields was an actual and/or apparent agent of UPRR.

33. Ms. Shields closed her investigation prior to completion of the DNA testing that confirmed the UPRR's supervisor's ejaculate somehow got into his employee's mouth.

34. The corporate trope used by Ms. Shields to repudiate ROGERS on inconsistencies was, in fact, based on the self-serving records of statements by UPRR management.

35. ROGERS was always consistent in her truthful retelling of the facts.

36. UPRR management's re-telling of ROGERS' incident created the inconsistencies for which Ms. Shield could attempt to conceal her supervisor's sexual assault.

5

37. UPRR is a covered employer to which the Civil Rights Act applies.

38. UPRR Supervisor Jonathan Smith's demand for sexual acts under threat of discipline to his subordinate violated Title VII of the Civil Rights Act.

39. As a result of UPRR's actions, the Plaintiff has suffered and will continue to suffer both economic and non-economic harm.

### REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter Judgment in favor of Plaintiff and against Defendant and award the following relief:

a. Declaratory relief, including but not limited to a declaration that Defendant UPRR violated Title VII of the Civil Rights Act;
b. Appropriate injunctive relief, including but not limited to sexual harassment training of all employees in the department,
c. Back pay in an amount to be determined at trial;
d. Compensatory and consequential damages, including for emotional distress against defendant UPRR;
e. Punitive damages against defendant UPRR;
f. Pre-judgment and post-judgment interest at the highest lawful rate;
g. Attorneys' fees and costs of this action; and
h. Any such further relief as the Court deems appropriate.

**PLAINTIFF DEMANDS TRIAL BY JURY.**

Respectfully submitted,

| | |
|---|---|
| /s/William J. McMahon | /s/Elizabeth A. Kaveny |
| Attorney for Plaintiff | Attorneys for Plaintiff |
| Hoey & Farina, P.C. | Elizabeth A. Kaveny |
| 123 N. Wacker Drive, Suite 250 | Olivia A. Sarmas-Ford |
| Chicago, IL 60606 | Kaveny + Kroll, LLC |
| (312) 939-1212 | 180 N. Stetson Ave., Suite 3350 |
| wmcmahon@hoeyfarina.com | Chicago, IL 60601 |
| Firm ID No. 70006 | elizabeth@kavenykroll.com |
| | olivia@kavenykroll.com |
| | Firm ID No. 63499 |