UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MONICA ROGERS, <br><br> Plaintiff, <br><br> v. <br><br> UNION PACIFIC RAILROAD COMPANY, <br><br> Defendant. | No. 20 CV 100 <br><br> District Judge Durkin <br><br> Magistrate Judge McShain |

### MEMORANDUM OPINION AND ORDER

Pending before the Court is defendant Union Pacific Railroad Company's motion to enforce settlement agreement. [129, 133].[1] The motion is fully briefed [136, 142].[2] For the following reasons, defendant's motion is granted.

### Background

Rogers filed two lawsuits against Union Pacific: this case, alleging a violation of Title VII of the Civil Rights Act of 1964, and a case pending in the Circuit Court of Cook County, Illinois that brings claims under the Federal Employers' Liability Act.

On June 7, 2022, Union Pacific made what it characterized as its "final and best offer" to settle both of Rogers' cases. [133-1] 2. The defense offer included, *inter alia*, a financial payment to Rogers, a global settlement of both cases, a full release of all claims against Union Pacific, Rogers' resignation from Union Pacific and a waiver of her right to seek future employment with the company, confidentiality and non-disparagement provisions that applied to Rogers, and a requirement that Rogers pay

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. The Court has found it necessary to refer to several sealed filings that contain the terms of the parties' settlement agreement, but the Court has attempted to do so without unnecessarily revealing details of the settlement agreement. To the extent the Court has discussed certain terms of the settlement agreement, however, the Court has done so because it is necessary to explain the path of its reasoning. *See In re Specht*, 622 F.3d 697, 701 (7th Cir. 2010); *Union Oil Co. of Cal. v. Leavell*, 220 F.3d 562, 568 (7th Cir. 2000).

[2] The parties have executed a limited consent to the undersigned's exercise of jurisdiction over the motion to enforce. [134, 140].

liquidated damages if she breached the confidentiality provision. [*Id.*] 2-3. Later that same day, plaintiff's counsel emailed defense counsel to "confirm[ ] that plaintiff accepts the [dollar amount omitted] offer." [*Id.*] 2. On June 8, plaintiff's counsel notified the Court, via email, that the parties "reached a settlement," and that "[t]he general terms have been agreed, but the settlement documents are being drafted and have not been finalized." [129-3] 2. Counsel also advised the Court that it did not need to address several "pending motions." [*Id.*].

On July 25, 2022, the parties filed a joint status report stating that, "[o]n June 7, 2022, the parties reached a global settlement agreement resolving this case and the related state case[.]" [115] 1. The report also stated that draft versions of the agreement had been exchanged on July 11, July 14, and July 19. [*Id.*]; *see also* [129] 3. The parties reported that they "continue to cooperate to document the settlement agreement and expect to have the written agreement finalized within (14) days." [115] 2.

In an August 8, 2022 joint status report, the parties reiterated that "a global settlement agreement resolving" the two cases had been reached on June 7. [117] 1. But the parties also informed the Court that they had "reached an impasse with respect to at least three issues." [117] 1-2. The three unresolved issues were (1) the apportionment of the settlement proceeds between Rogers' two cases for tax purposes, (2) whether the confidentiality and non-disparagement provisions applied to Union Pacific, and (3) the choice of venue and governing law for any settlement-related disputes. [136] 2; [142] 9-13. At the parties' request, the Court conducted several joint and *ex parte* conferences to resolve these issues. [120, 121, 122, 123, 124, 126, 127]. However, on September 1, 2022, plaintiff's counsel informed the Court that Rogers "has declined any settlement offer if it includes a resignation," a term that counsel acknowledged "has been a condition of the settlement since June." [133-4] 2. Plaintiff's counsel explained that, "[w]hile the past three months ha[ve] seen the plaintiff eventually come around to each new proposal that was on the table . . . it appears now that she is not going to accept any proposal with a resignation." [*Id.*]. Rogers herself later submitted a letter to the Court in which she explained why she did not want to resign as part of the settlement. [136-1]. Nowhere in the letter did Rogers claim that she did not understand that Union Pacific's settlement offer was conditioned on her resignation, nor did she allege that her lawyers failed to advise her of or explain the significance of this condition. *See* [*id.*] 1-3.

Shortly thereafter, Union Pacific filed the pending motion to enforce the written version of the settlement agreement dated July 19, 2022. [129] 7; [133]. It argues that the parties reached a binding agreement on all material terms of the settlement on June 7, 2022, including Rogers' resignation. [129] 6-7. Union Pacific further argues that the parties' written (but unexecuted) settlement agreement dated July 19, 2022 embodies all material terms that were agreed to on June 7, and that none of the material terms had changed while the parties worked between June 7

2

and July 19 to finalize the language of the written agreement. [142] 6. In response to the motion, plaintiff's counsel candidly concedes that his client's decision "on August 31, 2022 that she did not think it was fair for a resignation to be a part of the settlement agreement" provides no basis for undoing the settlement. [136] 1. Counsel does contend, however, that no enforceable settlement agreement exists because "there are three material terms that were not finalized" during the parties' negotiations: the tax treatment of the settlement proceeds, the mutuality of the confidentiality and non-disparagement provisions, and the choice of venue and governing law for settlement-related disputes. [*Id.*] 2. Union Pacific replies that none of these terms was material to the settlement agreement. [142] 8-14. It also contends that the parties subsequently reached an agreement on those terms before plaintiff indicated that she would not accept the settlement agreement because it required her to resign. [*Id.*] 8, 10, 12, 14.[3]

## Legal Standard

A district court has "the inherent or equitable power summarily to enforce an agreement to settle a case pending before it." *Wilson v. Wilson*, 46 F.3d 660, 664 (7th Cir. 1995).

"State contract law governs issues concerning the formation, construction, and enforcement of settlement agreements." *Beverly v. Abbott Labs.*, 817 F.3d 328, 333 (7th Cir. 2016). Union Pacific contends, *see* [129] 5-6, and plaintiff does not dispute, *see* [136] 1-2, that Illinois law governs whether an enforceable settlement agreement exists. Because the Seventh Circuit has made clear that it is "local contract law" that governs, *Pohl v. United Airlines, Inc.*, 213 F.3d 336, 338 (7th Cir. 2000), the Court concludes that Illinois law applies, notwithstanding plaintiff's contention that one of the purportedly unresolved settlement terms is whether settlement-related disputes should be governed by Illinois or Nebraska law. *See Silver v. Means*, No. 21 C 127, 2021 WL 3033532, at *2 (N.D. Ill Jul. 19, 2021) (in case where plaintiff asserted that Texas law applied to enforceability of settlement agreement, court found that "[a]lthough this settlement conference took place over the phone, it was hosted by a magistrate judge sitting in Illinois, regarding a suit filed in the Northern District of Illinois, so it is Illinois contract law that applies in determining whether a binding contract was formed").

Under Illinois law, a valid settlement agreement requires an offer, an acceptance, and consideration. *Roehrich y Gorostieta v. Menard, Inc.*, No. 19 C 3049, 2021 WL 4928022, at *2 (N.D. Ill. Jun. 30, 2021). "[A] settlement agreement is enforceable if there was a meeting of the minds or mutual assent as to all material terms, and such terms are definite and certain." *Id.* "Illinois follows the objective

---

[3] The Court gave plaintiff an opportunity to file a supplemental brief in response to Union Pacific's reply, *see* [139], but no further briefing was submitted.

3

theory of intent whereby the written records of the parties' actions–rather than their subjective mental processes–drive the inquiry." *Beverly*, 817 F.3d at 333.

"The material terms of the settlement agreement must be definite and certain, so the Court can determine when a breach occurs." *Johnson v. Dart*, No. 09 C 6940, 2011 WL 3157298, at *2 (N.D. Ill. Jul. 26, 2011) (internal quotation marks omitted). "A material term is an essential provision of a contract that is of such nature and importance that the contract would not have been made without it." *Sprint Nextel Corp. v. AU Elec., Inc.*, No. 12 C 9095, 2014 WL 258808, at *5 (N.D. Ill. Jan. 23, 2014). "Specifically, a material term is a provision that goes to the 'heart' of the settlement, as evidenced by the parties' conduct during settlement negotiations." *Id.*

"If the material terms are agreed upon, the [ ] agreement is binding even if non-material terms are missing or reserved for later discussion." *Cent. Laborers' Pension Fund v. AEH Constr., Inc.*, No. 14-3052, 2015 WL 1539003, at *3 (C.D. Ill. Mar. 31, 2015). "Illinois courts have consistently held that an agreement may be enforceable even though some terms may be missing or left to be agreed upon by the parties." *Caldwell Banker Real Estate LLC v. Centanne*, No. 10 C 2299, 2010 WL 4313766, at *3 (N.D. Ill. Oct. 25, 2010).

## Discussion

### A. The Parties Reached A Binding Agreement On All Material Terms On June 7, 2022.

The evidence before the Court establishes that the parties reached a binding settlement agreement as to all material terms on June 7, 2022. In an email to plaintiff's counsel that day, Union Pacific proposed a global resolution of Rogers' two lawsuits that called for, *inter alia*, Rogers' resignation and waiver of the right to seek future employment with the railroad. [133-1] 2-3. Plaintiff's counsel responded by email several hours later to "confirm[ ] that plaintiff accepts the [ ] offer." [*Id.*] 2. Plaintiff's unqualified acceptance of Union Pacific's "final and best" offer demonstrates that there was a meeting of the minds as to the material terms of the settlement agreement set forth in the offer–including the resignation provision–and the Court accordingly concludes that a binding settlement agreement was reached on June 7, 2022. *See Roehrich y Gorostieta*, 2021 WL 4928022, at *2 (settlement is enforceable if there was mutual assent to all material terms); *see also Thompson v. ATG Credit, LLC*, No. 18 CV 1992, 2018 WL 4520224, at *2-3 (N.D. Ill. Jun. 1, 2018) (emails exchanged between parties containing offer and acceptance constituted enforceable settlement agreement, even though parties continued to negotiate immaterial terms).[4]

---

[4] The Court recognizes that Union Pacific's June 7 offer referred to "[o]ther material terms to be included in a written settlement agreement." [133-1] 3. But the inclusion of this language did not prevent the parties from forming an enforceable settlement agreement. Most

4

Underscoring this conclusion are plaintiff's counsel's repeated representations that the parties had reached a settlement. Counsel so advised the Court by email on June 8, 2022, *see* [129-3] 2, and counsel signed the July 25 and August 8 joint status reports stating that "the parties reached a global settlement agreement resolving this case and the related state case[.]" [115] 1; [117] 1. Nowhere did plaintiff or her counsel dispute that the settlement required plaintiff to resign her position at Union Pacific and waive the right to seek future employment with the company. There is no question, then, that the parties had a meeting of the minds as to these terms of the settlement, including the resignation. *See Thompson*, 2018 WL 4520224, at *4 ("[T]he Court notes that although plaintiff now argues against an enforceable agreement, plaintiff's counsel repeatedly stated in communications to defense counsel that the parties had reached an agreement to settle this matter. Such conduct also weighs in favor of granting defendant's motion.").

The Court further observes that all material terms of the June 7 settlement agreement are set forth in the unexecuted version of the parties' written settlement agreement dated July 19, 2022. *See* [142-1] 2-12. Like the June 7 offer that plaintiff accepted, the July 19 draft called for a monetary payment to plaintiff, a release of all claims in both the state and federal cases, her resignation from Union Pacific and waiver of the right to seek future employment, confidentiality and non-disparagement clauses applicable to plaintiff, and the liquidated-damages provision. [*Id.*], at ¶¶ 2-6, 8, 19. Although the July 19 draft contained additional terms beyond those agreed to on June 7, the Court emphasizes that there had been no change to any of the material terms between June 7 and July 19. Moreover, plaintiff's counsel represented to the defense on August 8, 2022 that, subject to three proposed terms that the Court addresses immediately below, "plaintiff is prepared to sign the release and resign[.]" [133-3] 2.

Lastly, the Court reiterates that plaintiff's change of heart about the resignation provision cannot undo the binding settlement agreement reached on June 7. *See Roehrich y Gorostieta*, 2021 WL 4928022, at *2 ("A mere change of mind is not sufficient grounds for setting aside a settlement agreement.") (internal quotation marks omitted).

Plaintiff does not dispute that, by June 7, 2022, the parties had agreed to the terms included in Union Pacific's final offer. *See* [136] 1-2. Rather, plaintiff argues that no enforceable settlement agreement existed because the parties had not agreed

---

importantly, plaintiff accepted the June 7 offer without identifying or proposing any other material terms that were not included in the offer. Furthermore, the July 19, 2022 draft of the written settlement agreement reflects that none of the material terms had changed after June 7. *Compare* [133-1] 2-3 *with* [142-1] 2-3, 4-11. Finally, as the Court explains below, none of the disputed terms identified by plaintiff was, in fact, material to the settlement agreement.

5

on three other terms that, according to plaintiff, were material: the apportionment and tax treatment of the settlement proceeds, the mutuality of the confidentiality and non-disparagement clauses, and the choice of venue and governing law for settlement-related litigation. The Court rejects this argument because nothing in the parties' correspondence or conduct suggests that these terms "go[ ] to the 'heart' of the settlement[.]" *Sprint*, 2014 WL 258808, at *5.

Regarding the apportionment of the settlement proceeds, plaintiff made an initial proposal on this issue on May 20, 2022 that was rejected by Union Pacific. [133-1] 6-7. Union Pacific responded that it would revisit the apportionment issue "if the parties are able to reach an agreement on the amount of settlement," but the parties' correspondence reflects that this issue was not revisited before June 7. *See* [*id.*] 2-5. Plaintiff then accepted the defense offer on June 7 without mentioning apportionment. In these circumstances, the Court concludes that the apportionment issue was not material. *See Love v. Illinois Bell*, 210 F. App'x 516, 518 (7th Cir. 2006) (holding that settlement term was not material because disputed term "was never mentioned" during settlement discussions, and plaintiff "did not object to the absence of this term, though she could have easily done so if she considered it material"). The same holds true for the tax treatment of the settlement proceeds, an issue that Union Pacific–rather than plaintiff–raised during settlement discussions, *see* [133-1] 7, but notably omitted from its final settlement offer, *see* [*id.*] 2-3. Again, plaintiff remained silent on this issue when she accepted Union Pacific's offer. *See* [133-1] 2. The Court therefore concludes that the tax issue was not a material term. *Accord Demissie v. Starbucks Corp. Office & Headquarters*, 688 F. App'x 13, 14 (D.C. Cir. 2017) (tax treatment of settlement proceeds was not material where parties negotiated this term after agreeing to core of settlement, plaintiff did not renege when parties could not agree on tax treatment, and plaintiff faced only "relative[ly] insignifican[t]" tax consequences regardless of how proceeds were treated); *Natale v. East Coast Salon Servs., Inc.*, No. 13-1254 (NLH/JS), 2016 WL 659722, at *2 (D.N.J. Feb. 18, 2016) ("mechanics of the payment of settlement funds" and attendant tax consequences "constitute[ ] a non-essential term of the settlement contract").

Likewise, there is no evidence to support plaintiff's claim that the mutuality of the confidentiality and non-disparagement provisions was a material settlement term. As Union Pacific observes, plaintiff never mentioned this issue before accepting the June 7 settlement offer. *See* [133-1] 2-8. Rather, plaintiff raised the issue after that agreement had been reached, and even then plaintiff did not object or attempt to renege on the deal when Union Pacific stated that it "will not agree to mutual confidentiality or mutual non-disparagement provisions." [133-2] 2-3; *see also Dillard v. Starcon Int'l, Inc.*, 483 F.3d 502, 508-09 (7th Cir. 2007) (rejecting argument that confidentiality and non-disparagement clauses are always material settlement terms).

6

Nor, finally, is there any basis to conclude that the choice of venue and governing law for settlement-related litigation was material. Plaintiff did not raise these terms during the parties' email settlement discussions, the terms were not included in Union Pacific's final offer, and plaintiff did not object to the absence of these terms when she accepted the defense offer. *See* [133-1] 2-8; *accord Love*, 210 F. App'x at 518.

In sum, these three terms were not material components of the parties' settlement agreement, and the fact that the parties continued to negotiate immaterial terms after the June 7 agreement had been reached does not affect the enforceability of that agreement. *See Cent. Laborers' Pension Fund*, 2015 WL 1539003, at *3 (settlement agreement on material terms "is binding even if non-material terms are missing or reserved for later discussion"). Because the parties reached a binding settlement agreement on the material terms set forth in Union Pacific's June 7, 2022 "final and best" offer, including plaintiff's resignation, the Court will grant Union Pacific's motion to enforce and order the parties to execute a settlement agreement that includes those terms.

### B. The Record Demonstrates Mutual Assent As To All Three of The Non-Material Terms.

Union Pacific argues in the alternative that, regardless of whether the three disputed terms were material, the parties reached an agreement on these terms prior to September 1, 2022, when plaintiff changed her position on the termination provision. [142] 8, 10, 12, 14. It contends that the parties agreed on a certain apportionment of the settlement proceeds between the instant case and the state-court case, as well as on the choice of venue and governing law for settlement-related litigation, during an off-the-record telephone conference with the undersigned on August 26, 2022. [*Id.*] 10, 14. Regarding the mutuality of the confidentiality and non-disparagement provisions, Union Pacific observes that plaintiff's opposition brief "acknowledges . . . that the parties reached a compromise" as to this issue. [*Id.*] 12-13 (citing [136] 2).

The Court concludes that the parties reached an agreement as to the mutuality of the confidentiality and non-disparagement clauses. As Union Pacific observes, the parties reached an oral agreement whereby (1) Union Pacific would, upon request for an employment reference or employment verification, provide only plaintiff's dates of employment and last position held; and (2) plaintiff would provide Union Pacific with a list of employees whom Union Pacific would instruct not to make disparaging comments about plaintiff. [142] 12-13. The statement in plaintiff's opposition brief that the parties "reached a compromise" on this issue, *see* [136] 2, demonstrates that there was mutual assent on this term. *See Thompson*, 2018 WL 4520224, at *4

7

The Court also agrees that the parties reached an agreement as to the apportionment of the settlement proceeds and the choice of venue and governing law for settlement-related litigation. Union Pacific states that it made certain proposals respecting these terms on August 24, 2022, and that during an off-the-record telephone conference on August 26, 2022 plaintiff's counsel stated that plaintiff would agree to these terms if Union Pacific would award plaintiff backpay that plaintiff might have been entitled to as a collective bargaining unit member had she remained employed by the railroad. Plaintiff did not specify an amount of backpay. The Court recalls plaintiff's counsel stating that plaintiff was ready to execute the written agreement by August 31, 2022, to include the defense's most recent apportionment of the settlement proceeds and choice of venue, if Union Pacific would agree to award backpay. Union Pacific later communicated to plaintiff that it was willing to offer an award of backpay, and offered a specific amount, and this was confirmed during an off-the-record telephone conference with the Court on August 29, 2022. In that telephone conference on August 29, plaintiff's counsel requested until September 2, 2022 (as he was traveling and could not meet his previously offered deadline of August 31, 2022), to communicate plaintiff's final position on the amount of backpay. The Court then learned via email sent on September 1, 2022 and the instant motion, that the plaintiff had rejected the settlement because it required her resignation. The plaintiff's offer on August 26—to agree to execute the settlement agreement and accept the defense's most recent apportionment of the settlement proceeds and choice of venue—was contingent upon Union Pacific agreeing to award an amount of backpay. As confirmed on August 29, Union Pacific agreed to do just that, and also provided a dollar amount for that award. Thus, as of August 29, while the parties had not reached mutual agreement on the amount of backpay, the parties had reached agreement on the two outstanding terms of apportionment and venue. This record supports that the only outstanding issue was the amount of backpay, to which plaintiff never responded because she reneged on the settlement due to the termination provision. Accordingly, the Court concludes there was a meeting of the minds on these two additional, non-material terms. Nothing in this decision precludes the parties from attempting to reach an agreement on an amount for the backpay award and including such term in the parties' settlement agreement.

## Conclusion

For the reasons set forth above, Union Pacific's motion to enforce settlement [129, 133] is granted. No later than December 19, 2022, the parties must execute a settlement agreement containing (1) all material terms that were agreed to on June 7, 2022, *see* [133-1] 2: a global settlement of both of plaintiff's lawsuits and a full release and waiver of all claims, no admission of liability by Union Pacific, plaintiff's resignation from Union Pacific and her waiver of the right to seek future employment with the company, a monetary payment to plaintiff, confidentiality and non-disparagement provisions applicable to plaintiff, the provision requiring plaintiff to pay liquidated damages for any breach of the confidentiality provision, and the fee-

8

shifting provision under which the prevailing party in any dispute arising out of the settlement agreement would be entitled to recover its fees and costs; (2) the neutral reference and non-disparagement language applicable to Union Pacific that is discussed in this decision; (3) the apportionment percentages and choice of venue agreed to by plaintiff on August 26, 2022; and (4) defendant's agreement to pay a backpay amount tied to the collective bargaining agreement negotiations also discussed in this decision. No later than December 30, 2022, the parties must file a stipulation to dismiss this case with the District Judge.

**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: November 22, 2022**